United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Friedrich Hans-Georg Radde, <br> Plaintiff, <br><br> v. <br><br> BMS Intermediaries, Inc., <br> Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 18-23274-Civ-Scola <br> ) <br> ) <br> ) |

**Order Granting Motion to Dismiss**

Plaintiff Friedrich Hans-Georg Radde complains his employer, Defendant BMS Intermediaries, Inc., failed to pay him certain amounts due under the parties' oral employment agreement. (Compl. ¶ 26, ECF No. 1-1, 8–9.) Radde also claims BMS tortiously interfered with his business relationships. (*Id.* at ¶¶ 28–34.) In response, BMS submits Radde's complaint should be dismissed for his failure to state a claim for either breach of contract or tortious interference with an advantageous business relationship. After careful review, the Court agrees with BMS that Radde's complaint should be dismissed and **grants** BMS's motion (**ECF No. 5**).

1. **Background**[1]

BMS is in the business of "provid[ing] comprehensive, customized solutions for wholesale, reinsurance, and direct insurance." (Compl. at ¶ 3 (internal quotations omitted).) As part of its efforts to expand, BMS recruited Radde and his reinsurance team who were, in early 2016, working for a competitor. (*Id.* at ¶ 6.) BMS and Radde verbally agreed that (1) "Radde would begin working for [BMS] at [a] starting salary of $220,000.00" "during the first year of his employment"; (2) "after one year," "Radde's salary would be increased to $250,000.00"; and (3) Radde "would receive [] bonus[es] for 2016 and 2017 based on calculations contained in [BMS's] May 6, 2016 [written] offer of employment." (*Id.* at ¶¶ 10, 24.)

When Radde joined BMS, he had a "book of business totaling approximately $2,000,000.00." (*Id.* at ¶¶ 11, 29.) This "book of business" consisted of various insurance companies in Latin America and the Caribbean which buy reinsurance coverage to reduce their risk in the event of particularly

---

[1] This background is based on the allegations Radde presents in his complaint. For the purposes of evaluating BMS's motion, the Court accepts these allegations as true and construes the allegations in the light most favorable to Radde per Federal Rule of Civil Procedure 12(b)(6).

large losses. (*Id.* at ¶¶ 11, 30.) In order to engage new business or maintain his existing clients, Radde needed to invest significant time meeting with or advising these entities. (*Id.* at ¶ 30.) At BMS's request, Radde submitted a business plan for 2016, 2017, and 2018 to BMS's senior Miami representative. (*Id.* at ¶¶ 12–13.) In the plan, Radde estimated twenty-nine business trips would be required "to each region . . . to maintain his current clients." (*Id.* at ¶¶ 12, 15.) Radde also predicted the revenue he anticipated per country. (*Id.*) Radde and BMS representatives "met on several occasions . . . to review[] Mr. Radde's existing and potential clients." (*Id.* at ¶ 31.)

Almost immediately after Radde started working, on June 16, 2016, BMS began taking active steps to undermine him: BMS authorized only four of the twenty-nine trips Radde said were necessary to maintain his current clients; BMS allocated business Radde originated to other BMS employees; BMS forwarded information about Radde's clients to other employees and third parties; BMS did not offer critical support to Radde's clients; BMS refused to share important information regarding market developments; BMS excluded Radde from meetings involving his "treaty brokering team"; and BMS did not let Radde go to conferences that he needed to attend to meet with existing clients, develop new clients, and present business opportunities to reinsurers. (*Id.* at ¶¶ 14–15).

Additionally, BMS did not pay Radde "the agreed to bonuses" nor did it pay him the agreed upon salary for his first two years of employment. (*Id.* at ¶¶ 16, 26.) Ultimately, on April 6, 2018, BMS notified Radde that it was demoting him and reducing his salary. (*Id.* at ¶ 18.) A month later, Radde objected to the demotion and reduction in pay. (*Id.* at ¶ 21.) Thereafter, on June 14, 2018, BMS terminated Radde for violating corporate policies. (*Id.* at ¶ 22.)

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna*

*Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atlantic Corp*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### 3. Analysis

#### A. Radde fails to state a claim for breach of contract.

Radde maintains he and BMS entered into an oral employment agreement. The terms of this agreement required BMS to pay Radde (1) $220,000 during his first year of employment and $250,000 during his second; and (2) bonuses for 2016 and 2017 based on calculations set forth in BMS's written employment offer. Radde, through his complaint, has not alleged any other contract terms. BMS argues that these allegations are insufficient to establish the creation of an employment contract in the first instance and therefore Radde's breach of contract claim fails. After careful analysis, the Court agrees with BMS and finds Radde has failed to state of claim for breach of contract.

"The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *Abbott Labs., Inc. v. Gen. Elec. Capital*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). Thus, if a plaintiff cannot establish there was a valid contract to begin with, he cannot succeed in establishing a breach of that contract. "With regard to alleging the existence of [a] contract, a plaintiff must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Kelley v. Metro. Life Ins. Co.*, 13-61864-CIV, 2013 WL 5797367, at *2 (S.D. Fla. Oct. 28, 2013) (Cohn, J.) (quoting *Vega v. T–Mobile USA, Inc.,* 564 F.3d 1256, 1272 (11th Cir. 2009)). "While it is not necessary that all details of an agreement be fixed in order to have a binding agreement between parties, if there has been no agreement as to essential terms, an enforceable contract does not exist." *Jacksonville Port Auth., City of Jacksonville v. W.R. Johnson Enterprises, Inc.*, 624 So. 2d 313, 315 (Fla. 1st DCA 1993).

The complaint here is deficient because it contains no allegation of an offer or an acceptance of the parties' employment contract, stating only that the parties "entered into an oral contract." *Kelley*, 2013 WL 5797367, at *2 (finding the same where the complaint alleged only that "the parties entered into an employment contract") (citing *Pineda v. PRC, LLC*, 1:11-CV-20894-JLK, 2011 WL 3022564, at *4 (S.D. Fla. July 22, 2011) (King, J.) (dismissing breach-of-contract claim where there were "no allegations . . . regarding offer [or] acceptance"). "To create a contract, it is essential that there be reciprocal assent to a certain and definite proposition." *Hawaiian Airlines, Inc. v. AAR Aircraft Services, Inc.*, 167 F. Supp. 3d 1311, 1317 (S.D. Fla. 2016) (Moore, C.J.). Here, the complaint makes no reference to who made the offer, which party accepted, what the offer was actually comprised of, or what BMS was getting from Radde in return for the specified salary and bonuses.

Relatedly, the complaint lacks allegations regarding essential terms of the putative employment contract. "Which terms are 'essential' to a contract varies according to the nature of the contract." *Kelley*, 2013 WL 5797367, at *2. For example, the "[f]ailure to sufficiently determine quality, quantity, or price may preclude the finding of an enforceable agreement." *Jacksonville Port Auth.*, 624 So. 2d at 315. Importantly, "to state a cause of action for breach of an oral contract, a plaintiff must allege that the parties mutually assented to a certain and definite proposition and left no essential terms open." *Uphoff v. Wachovia Sec., LLC*, 09-80420-CIV, 2009 WL 5031345, at *3 (S.D. Fla. Dec. 15, 2009) (Marra, J.) (citing *Irby v. Memorial Healthcare Group, Inc.,* 901 So.2d 305, 306 (Fla. 1st DCA 2005) for the proposition that a "letter proposing employment but failing to provide terms of employment or salary of the plaintiff is not an enforceable contract under Florida law"). Here, there is no way to determine, from the allegations in the complaint, what services Radde was obligated to provide in return for the salary and bonuses Radde says BMS agreed to pay him. Although Radde generally maintains, in his complaint, that he "fully performed his duties as agreed by the parties" (Compl. at ¶ 25), he provides not a single detail regarding what any of those duties actually were. Was BMS obligated to pay Radde even if his performance was subpar? What if he didn't show up to work at all? Was the employment agreement at will? For a set time period? Did BMS retain the right to amend, terminate, or modify the parties' arrangement at any time? What were the basic terms of employment? The complaint answers none of these questions and the Court "cannot make a contract for the parties." *Truly Nolen, Inc. v. Atlas Moving & Storage Warehouses, Inc.,* 125 So. 2d 903, 905 (Fla. 3d DCA 1961). An essential term, it would seem, of any employment contract, would be what is expected from an employee in return for a stated sum. Without this essential term, Radde has

failed to allege the formation of a contract. *See Jacksonville Port Auth.*, 624 So. 2d at 315 ("So long as any essential matters remain open for further consideration, there is no completed contract.")[2]

Based on the above analysis, the Court finds Radde has, indeed, failed to state a claim for breach of contract against BMS.[3]

### B. Radde fails to state a claim for tortious interference with an advantageous business relationship.

Radde maintains he has properly alleged a claim for tortious interference with a business relationship because (1) Radde "maintained a book of business valued in excess of $2,000,000"; (2) BMS was aware of "the specific requirements of Mr. Radde's business"; and (3) BMS, for no valid reason, destroyed Radde's "book of business" by taking various actions involving Radde's "business" and "clients" and withholding certain support. (Pl.'s Resp. at 4–5.) BMS argues Radde's allegations fail because he has not (1) alleged any interference with any particular client; (2) set forth the enforceable rights that he was entitled to with respect to any particular relationship; or (3) shown that BMS was a third party or stranger to the relationship that was interfered with. (Def.'s Mot. at 8.) After review, the Court agrees with BMS and concludes Radde has failed to state a claim for tortious interference.

A claim for tortious interference with a business relationship contains four elements: (1) the plaintiff had a business relationship; (2) the defendant had knowledge of this relationship; (3) the defendant, as a third party to the relationship, intentionally and unjustifiably interfered with the relationship; and (4) the plaintiff suffered damages as a result of the interference. *Dynasty Mgmt., LLC v. UMG Recordings, Inc.*, 17-14922, 2018 WL 6721320, at *4 (11th Cir. Dec. 21, 2018).

To begin with, "an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Orange Lake Country Club,*

---

[2] Significantly, Radde does not respond or counter BMS's argument that the parties' putative contract fails because it does not include an essential term regarding Radde's performance obligations. The Court thus finds, under Local Rule 7.1(c), that Radde has waived any argument in opposition to BMS's nonfrivolous legal argument, in effect conceding the point. *See Brown v. Buddy Bee Corp.*, 14-24368-CIV, 2015 WL 11233388, at *4 (S.D. Fla. Mar. 11, 2015) (Altonaga, J.) ("[A party's] failure to address [an opposing party's] nonfrivolous legal argument is tantamount to failure to respond to the [m]otion; the Court, pursuant to Local Rule, has the authority to grant a motion by default for failure to respond").

[3] BMS also argues Florida's statute of frauds would have, in any event, barred Radde's breach-of-contract claim. But since that argument hinges upon a finding that Radde properly alleged an enforceable agreement, the Court declines to address it.

*Inc. v. Reed Hein & Associates, LLC*, 617CV1542ORL31DCI, 2018 WL 5279135, at *4 (M.D. Fla. Oct. 24, 2018). Here, Radde does not specify any particular business relationship and instead refers only generally to "clients"; a "book of business" which "consisted of various insurance companies."; and simply "existing business." (Compl. at ¶¶ 11, 12, 29, 30, 32.) Notably absent from anywhere in the complaint is any reference whatsoever to an identifiable understanding or agreement which would have likely been completed had BMS not interfered. Radde does not counter this argument and instead merely reiterates "he maintained a book of business valued in excess of $2,000,000" and that "his clients consisted primarily of various insurance companies" which had "unique and specific needs." (Pl.'s Resp. at 5.) Such allegations fail to establish that Radde, in the first instance, had a protectable business relationship.

Notwithstanding this failure, even if Radde's allegations were sufficient to show he had a business relationship, with enforceable rights, he fails to establish that BMS was a third party to the business relationship. "[A] cause of action for wrongful interference with a business relationship is recognized only when the interference is by one who is not a party to that relationship." *Buckner v. Lower Florida Keys Hosp. Dist.*, 403 So. 2d 1025, 1028 (Fla. 3d DCA 1981). "A defendant is not a 'stranger' to a business relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." *Palm Beach County Health Care Dist. v. Prof'l Med. Educ., Inc.,* 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009) (quoting *Nimbus Tech., Inc. v. SunnData Prods., Inc.,* 484 F.3d 1305, 1309 (11th Cir. 2007)). Here, the allegations establish that Radde and BMS together worked on a plan to service Radde's "current clients." (Compl. at ¶¶ 12–13, 31.) This was a joint relationship and, as such, BMS could not tortiously interfere with the relationship of which it was a part.

In sum, Radde has failed to allege a claim for tortious interference with an advantageous business relationship.

### 4. Conclusion

Based on the foregoing, the Court **grants**, albeit **without prejudice**, BMS's motion to dismiss for Radde's failure to state a claim with respect to both counts of his complaint (**ECF No. 5**). Radde, however, has not requested leave to amend; nor has he indicated in his response to BMS's motion any inclination whatsoever to do so. The Court thus dismisses the complaint without leave to amend. *Wagner v. Daewoo Heavy Industries Am. Corp.,* 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is

represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *Avena v. Imperial Salon & Spa, Inc.*, 17-14179, 2018 WL 3239707, at *3 (11th Cir. July 3, 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.")

The Clerk is directed to **close** this case. Any pending motions are **denied as moot**.

**Done and ordered**, at Miami, Florida, on March 6, 2019.

_____
Robert N. Scola, Jr.
United States District Judge